

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| KAYLA DUKE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) |
| | )    **Civil Action No. 5:22-cv-1402-CLS** |
| TOPRE AMERICA | ) |
| CORPORATION, | ) |
| | ) |
|     Defendant. | ) |

### MEMORANDUM OPINION

Plaintiff, Kayla Duke, began employment with defendant, Topre America Corporation, on January 25, 2021. Topre is an automotive parts supply company specializing in metal stamping. Its plant is located in Cullman, Alabama.[1] Plaintiff's tenure with the company was brief. She did not report for work again after March 22, 2021: not quite two months after she began.[2] She alleges that her workplace became intolerable because of sexually harassing conduct by a male co-worker, Michael McWilliams. As such, plaintiff asserts claims of sex discrimination and constructive discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. The following opinion addresses defendant's motion for summary judgment, as well as its objections to plaintiff's evidentiary submission. (Doc. nos. 30 & 42).

---

[1] Doc. no. 1 (Complaint), ¶ 14; doc. no. 32-5 (Plaintiff dep.), at 64.

[2] Doc. no. 1 (Complaint), ¶ 35.

# I.  STANDARDS OF REVIEW

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In other words, summary judgment in favor of a movant is proper, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When considering a motion for summary judgment, "the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment."  *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation."  *Daniels v. Twin Oaks Nursing Home,* 692 F.2d 1321, 1324 (11th Cir. 1983) (alterations supplied).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party

for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (alterations and emphasis supplied).

## II.  FACTUAL BACKGROUND

Topre has a written policy against "Sexual and Other Unlawful Harassment."[3] It directs an employee who believes that she or he has experienced harassment based upon, among other categories, her (or his) sex, to report the offensive conduct to either the Human Resources Department or her (or his) department head.  The policy defines "sexual harassment" as "unwanted sexual advances, or visual verbal, or physical conduct of a sexual nature."[4]  Topre's policy provides a "partial list" of examples of sexual harassment which includes:

* Unwanted sexual advances or any other harassment based on the sex of the victim.

* Offering employment benefits in exchange for sexual favors.

* Making or threatening reprisals after a negative response to sexual advances.

---

[3] The "Sexual and Other Unlawful Harassment" policy is published in Topre's employee handbook, and distributed to new employees during orientation.  Doc. no. 32-2 (Topre Corporation Handbook), at ECF 147-48.  **NOTE**: "ECF" is an acronym formed from the initial letters of the name of a filing system that allows parties to file and serve documents electronically (*i.e.*, "Electronic Case Filing").  When the court cites to pagination generated by the ECF header, it will, as here, precede the page number(s) with the letters "ECF."

[4] *Id.* at ECF 148.

    \*      Visual conduct that includes leering, making sexual gestures, or displaying of sexually suggestive objects or pictures, cartoons or posters.

    \*      Verbal conduct that includes making or using derogatory comments, epithets, slurs, or jokes.

    \*      Verbal sexual advances or propositions.

    \*      Verbal abuse of a sexual nature, graphic verbal commentaries about an individual's body, sexually degrading words used to describe an individual, or suggestive or obscene letters, notes, or invitations.

    \*      Physical conduct that includes touching, assaulting, or impeding or blocking movements.

Unwelcome sexual advances (either verbal or physical), requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when: (1) submission to such conduct is made either explicitly or implicitly a term or condition of employment; (2) submission or rejection of the conduct is used as a basis for making employment decisions; or, (3) the conduct has the purpose or effect of interfering with work performance or creating an intimidating, hostile, or offensive work environment.

Doc. no. 32-2 at ECF 148 (Topre Corporation Handbook). Topre's policy also represents that "[a]ll allegations of sexual or other forms of harassment will be promptly investigated" by the company. *Id.* (alterations supplied).

## A.    Plaintiff's Employment

As previously noted, plaintiff began her employment with Topre on January 25,

4

2021.  She was classified  as a "hot stamp operator."[5]  As a hot stamp operator, plaintiff was required to monitor a machine that stamped each side of metal automotive parts.[6]  The leadership related to plaintiff's position included Noah Roberts, Natalie Caudle, and Brandon Cook.  Roberts was the "team lead" in the "hot stamp" section for most of plaintiff's brief stint of employment.[7]  Caudle was the "General Manager of Topre's Human Resources Department," while Cook, who held the position of "Hot Stamp Press Assistant Manager," was plaintiff's department head.[8]

Plaintiff's first encounter with co-worker Michael McWilliams, a forklift operator, occurred in February of 2021, shortly after she began working at Topre.[9]  On that occasion, McWilliams drove a forklift past plaintiff, paused, and said that "he liked the fine ass lady that could take charge."[10]  Though other workers were in the area, no one other than plaintiff heard the comment.[11]  At the time, plaintiff neither responded to nor reported the comment.[12]

---

[5] Doc. no. 1 (Complaint), ¶ 14.

[6] Doc. no. 32-5 (Plaintiff dep.), at 64-66.

[7] *Id.* at 70.  Michael McWilliams replaced Noah Roberts as "team lead" effective February 24, 2021.  Doc. no. 32-2 (Natalie Caudle dep.), at 230.

[8] Doc. no. 32-2 (Natalie Caudle dep.), at 24; doc. no. 32-3 (Brandon Cook dep.), at 72.

[9] Doc. no. 32-5 (Plaintiff dep.), at 82.

[10] *Id.* at 81.

[11] *Id.* at 82.

[12] *Id.* at 83-84.

On another occasion during that same month, McWilliams told plaintiff that "he wanted to run his tongue in [her] ass."[13]   Again, plaintiff did not respond to McWilliams; this time, however, she reported both comments to her "team lead," Noah Roberts, at her next break.[14]   Roberts said that plaintiff was not the first person to complain about McWilliams.[15]   Even so, plaintiff replied that she intended to report the comments to Brandon Cook, her department head.[16]

Plaintiff recounted during her deposition that she related both of McWilliams's comments to Brandon Cook the following day, before starting her shift, and explained that she "wasn't comfortable" working with McWilliams.[17]   Cook responded to plaintiff's description of McWilliams's conduct by merely saying "okay."[18]   Plaintiff testified that she reported the comments to Brandon Cook because Noah Roberts did not take any action, and she was apprehensive because she had heard that McWilliams might be promoted to "team lead" of the hot stamp section.[19]

Cook's deposition testimony stands in contrast to plaintiff's account.   He

---

[13] *Id.* at 85.

[14] *Id.* at 88.   Team leaders could not discipline employees, but should have reported complaints of sexual harassment to a supervisor.  Doc. no. 32-2 (Natalie Caudle dep.), at 67-68.

[15] Doc. no. 32-5 (Plaintiff dep.), at 89.

[16] *Id.* at 90.  See also note 8 and related text, *supra*, explaining that Brandon Cook held the position of "Hot Stamp Press Assistant Manager."

[17] Doc. no. 32-5 (Plaintiff dep.), at 90.

[18] *Id.*

[19] *Id.* at 92-93.

testified that plaintiff sent him a text message on February 25, 2021, asking whether he would be at work that evening, because she wanted to "talk to [him] about something."[20]   During the shift, Cook approached plaintiff and directed her to a quiet area to discuss her concerns.[21]   According to Cook, plaintiff did not disclose the substance of McWilliams's comments:

> [Plaintiff] said that she did not want [McWilliams] to be her team leader and I asked her why and she said "*Because he's intense.  I don't like him*," and I said, "Is there a reason?  Is there anything I need to know," and she said, "No.  He's just very intense.  I don't like him."
>
> \*     \*     \*     \*
>
> And I — I said so, you know, if there is a reason, I would — you know, let me know if there's something happening or anything like that, you know, I need to know because Michael wasn't even on that shift.  So yeah, he was — it wasn't even — I can't remember, but he was not even team leader on that shift yet, so that was, you know, to me concerning like, well, why don't you want to work with him.
>
> So — and she kept saying no, and I'll be honest, ultimately I didn't know why, and I honestly at the time I assumed it was because, you know, Michael was a black man.  He was a Muslim, and I thought maybe she's racist and maybe she doesn't want to be under somebody with a different color or religion.  I didn't know.  She didn't ever give me a reason.

Doc. no. 32-3 (Brandon Cook dep.), at 85 (emphasis and ellipsis supplied).

Plaintiff's concern that McWilliams might be promoted to "team lead" of her

---

[20] Doc. no. 32-3 (Brandon Cook dep.), at 82 (alterations supplied).  The record does not contain the referenced text message.

[21] *Id.* at 83.

7

section was realized when McWilliams was designated "hot stamp team lead," effective February 24, 2021.[22]  He was assigned to the night shift — the same shift that plaintiff worked.[23]  Even so, in view of plaintiff's expressed desire to not work directly with McWilliams, Cook reassigned plaintiff to the laser cut section following McWilliams's promotion.[24]

Sometime after McWilliams's promotion, he approached plaintiff during their break.  He sat next to her at one of the picnic tables and "rubbed up against [her] with his arms."[25]  She left the table to end the contact.[26]  McWilliams repeated this conduct on several more occasions.  When questioned during her deposition about the frequency of such conduct, plaintiff said that McWilliams sat uncomfortably close to her on fewer than five occasions.[27]

McWilliams initiated other unwelcome physical contact with plaintiff as well, which she described in the following manner:

> I was standing at my machine, which is up against a cage.  We lean against the cages to look at the machine and [McWilliams] would walk up behind me and he would stand right up against the back of me where his penis would brush my hand and stuff from behind, and he would

---

[22] Doc. no. 32-2 (Natalie Caudle dep.), at 230.

[23] Doc. no. 32-5 (Plaintiff dep.), at 93.

[24] Doc. no. 32-3 (Brandon Cook dep.), at 96.

[25] Doc. no. 32-5 (Plaintiff dep.), at 95.

[26] *Id.* at 97.

[27] *Id.* at 93.

stand there and watch the machine with me.

Doc. no. 32-5 (Plaintiff dep.), at 100 (alterations supplied).  Plaintiff testified that McWilliams's conduct occurred "a few times," and lasted "[j]ust a few seconds."[28] Although some of plaintiff's co-workers were nearby and within view of McWilliams's alleged conduct, no employee professed to have witnessed the conduct, nor did plaintiff ask her co-workers whether they had observed McWilliams's physical contact.[29]

The final event of which plaintiff complains was an interaction that occurred when McWilliams was summoned to meet with a staff member of the Human Resources Department.[30]  After "pulling [plaintiff] off the machine one night" and away from her workspace, McWilliams asked plaintiff if she would tell the HR staff member that he was a "good guy."[31]  Plaintiff did not respond to his request, but interpreted it as an intimidation tactic.[32]

After her shift on March 22, 2021, plaintiff did not return to work.[33]  Three days later, on March 25, 2021, night shift supervisor Nick Drouin sent plaintiff a text

---

[28] *Id.* at 100, 103.

[29] *Id.* at 100-01.

[30] *Id.* at 105-06.

[31] *Id.*

[32] *Id.* at 106-07.

[33] Doc. no. 32-5 (Plaintiff dep.), at 109.

message asking about her plans for returning to work.  The following exchange

ensued:

> [Plaintiff:] I'm tired [of] Michael.  I told Brandon that I wouldn't work
> under him.  He still makes me so uncomfortable with stuff he says and
> does.  I've told Brandon about it also and they wouldn't do anything
> about it.  I love my job but it stresses me going in to work with him.
>
> [Drouin:] You have to tell me or I can't do anything about it.
>
> [Plaintiff:] This has been an issue since [you] started working over there.
> June [the previous night shift supervisor[34]] knew, Noah [Roberts] . . . all
> of them did.  I thought [you] knew about it.
>
> \*      \*      \*      \*
>
> [Drouin:] I heard things but I can't go off hear say you have to come to
> me [*sic*].
>
> [Plaintiff:] Like I said I love my job and he's the only problem.

Doc. no. 40-2 (March 25, 2021 text message between plaintiff and Nick Drouin)

(alterations supplied, ellipsis in original).  Despite the preceding exchange, plaintiff

never reported the substance of McWilliams's comments, or the nature of his conduct,

to Drouin.[35]

## B.    Topre's Investigation of Complaints About McWilliams

A few days following plaintiff's final day of work, another Topre employee,

Clistie Bradley, presented Cook with the following written statement:

---

[34] *See id.* at 70.  June's last name does not appear in the record.

[35] *Id.* at 111-12.

> I Clistie Bradley am reporting a harassment report against my team lead Michael.  On Wednesday me and the other operator was fixing the HS [Hot Stamp] 1200b cause we had parts in the die and parts on the way.  Me and the other operator was making sure everything was ok.  The team lead [presumably McWilliams] came into the die.  Was talking he told me that he was the black man that I was going to date.  I told him I was with someone Lex and he continue to talking to me inappropriately.  I kept telling him I was with someone.  Today on 26 March I was on break and kept saying inappropriate things like I was sexy.  I do not like being talked to like that.

Doc. no. 32-4 (Timothy Brandon Cook decl.), at ECF 5 (alterations supplied).  Cook reported Bradley's complaint to Carrie Anderson, who was the human resources assistant manager.[36]  At the direction of Anderson, Cook moved McWilliams from the press section where Bradley was assigned, to the laser section.  Cook and Drouin were also directed  to observe both employees and report any matters of concern.[37]

Anderson's employment with Topre ended around April 23, 2021.[38]  At the end of Anderson's employ, Topre's human resources manager, Natalie Caudle, reviewed Anderson's pending files.[39]  Upon review, Caudle discovered Bradley's complaint, of which she previously had been unaware.[40]  She conferred with Cook and Drouin

---

[36] Doc. no. 32-3 (Brandon Cook dep.), at 40.

[37] *Id.*

[38] Doc. no. 32-2 (Natalie Caudle dep.), at 212, 216.  Natalie Caudle terminated Anderson's employment for performance issues.  *Id.* at 247.

[39] *Id.* at 212.

[40] *Id.* at 212.

to determine what steps had been taken to address the complaint.[41]  At this time, they advised her that they had received additional complaints about McWilliams.[42]

Caudle initiated an investigation of the complaints, and began meeting with employees.[43]  She interviewed at least twelve employees, including McWilliams, in connection with the complaints received by Cook and Drouin.[44]  During his interview, McWilliams himself complained that he was targeted because of his race and religion.[45]

In addition to Bradley, two employees interviewed by Caudle during the investigation stated that McWilliams made sexually offensive comments to them. Hannah Garnett provided a written statement, dated April 28, 2021, describing encounters with McWilliams as follows:

> Two weeks ago I had just pulled into work and as I was getting out of my car Michael McWilliams came up to me and asked me where I had come from.  I asked what he was talking about and he had said "because damn girl you don't look like you would work at Topre you look like you should be a model."  I didn't know what to say and he asked me where I was going.  I said to work.  He said "Come on baby you're fine let me take you out."  It made me feel very uncomfortable. I walked up to another worker (Rebecca Chambers) and ran inside the plant.  Everyday since he has followed me around watching me

---

[41] *Id.* at 212, 221.

[42] *Id.* at 213.

[43] *Id.*

[44] *Id.* at 261-63; doc. no. 32-2 (Investigation file appended as ex. 8 to Natalie Caudle dep.), at ECF 173-229.

[45] *See* doc. no. 32-2 (Investigation file appended as ex. 8 to Natalie Caudle dep.), at ECF 192.

constantly.  He makes up everything just to talk to me in the break room
and constantly riding by my cell on the forklift.

Doc. no. 32-2 (Investigation file appended as ex. 8 to Natalie Caudle dep.), at ECF

182.   Matthew Thomason also provided a written statement on the same date

corroborating Bradley's complaint:

> I Matthew Thomason witnessed team leader "Mike" talking
> inappropriate [*sic*] to Clistie Bradley.   Me and her was in the die
> adjusting centering and he came up and told her "he would be the only
> black man she ever dated."  Later that day he came outside on break and
> told her she was so sexy.   Clistie told him multiple times that she was
> with someone and to stop talking to her like that.

*Id.* at ECF 184 (alterations supplied).  Thomason also described in graphic detail

McWilliams's sexual propositions directed toward him, a male co-worker.[46]

Caudle concluded the investigation and prepared a report recommending that

Topre "terminate [McWilliams's] employment for violation of Topre America's

sexual harassment policy."[47]  She also found no support for McWilliams's allegations

of religious and racial bias.[48]  Caudle initiated a "circle sheet" used by the company

to secure the approval of members of the supervisory chain for decisions to terminate

employment.[49]  The document was circulated by Caudle to the following officials for

---

[46] *Id.* at ECF 184.

[47] *Id.* at ECF 175-76.  It appears that Caudle prepared the report for the management chain.
*See id.* at ECF 174.

[48] *Id.* at ECF 176.

[49] Doc. no. 32-2 (Natalie Caudle dep.) at 169.

their signatures:  Brandon Cook ("Manager"); Justin Hill ("Vice President"); Brad

Pepper ("HR Director"); and, Hideo Shimizu ("President").[50]  Caudle also signed the

"circle sheet" in her capacity as "General HR Manager."[51]  Each person concurred

with the recommendation to terminate McWilliams's employment, and he was fired

on or around June 8, 2021.[52]

## C.    EEOC Charge of Discrimination

Plaintiff   filed   a   charge   of   discrimination   with   the   Equal   Employment

Opportunity Commission on June 28, 2021, stating that:

> I.      I am a female individual.  I was hired by the Company on
> or about January 25, 2021 as a Machine Operator.  While employed I
> was subjected to egregious sexual harassment by Michael LNU [*i.e.*,
> "*last name unknown*"], Forklift Operator as early as February 2021.  I
> complained to numerous individuals within the organization to include
> Brandon Cook, Head of the Department and my Team Lead, Noah LNU
> right after the first incident in February 2021, to no avail.  Instead of
> addressing the complaint, I was placed under the direct supervisor [*sic*]
> of Michael LNU, when he was promoted to Team Lead, working on the
> night shift.  Once placed under Michael LNU, the harassment intensified
> and he began to intimidate me by telling me to tell Human Resources
> that he was a nice guy.  As a result of the sexual harassment and the fact
> that the Company failed to stop the harassment, I was constructively
> discharged on March 27, 2021.[53]

---

[50] *Id.* at 169-74; doc. no. 32-2 (Investigation file appended as ex. 8 to Natalie Caudle dep.), at ECF 174.

[51] Doc. no. 32-2 (Investigation file appended as ex. 8 to Natalie Caudle dep.), at ECF 174.

[52] Doc. no. 32-2 (Natalie Caudle dep.), at 173-74.

[53] Plaintiff's complaint states that she did not report to work beginning March 22, 2021.  Doc. no. 1 (Complaint), ¶ 35.  Plaintiff exchanged text messages with the night supervisor, Nick Drouin, on March 25, 2021, in which Drouin asked plaintiff if she planned to return to work.  Doc. no. 40-2.

II.     I was given no reason for the treatment I received.  When I complained to my previous team lead, Noah LNU, he told me that my complaint did not surprise him because other females had already complained of Michael LNU.  I believe other female class members were subjected to the same and/or similar conduct.

III.     I believe I was discriminated against due to my sex (female) in violation of Title VII of the Civil Rights Act of 1964, as amended.

Doc. no. 1-1 (Plaintiff's EEOC charge appended to Complaint) (alterations supplied).

On August 1, 2022, Iran Cruz, the EEOC employee assigned to investigate plaintiff's charge of discrimination, sent plaintiff an email stating, in part:

After interviewing the witnesses [identified by plaintiff], we wanted to follow up with you to advise you that based on the analysis of the information, interviews and evidence obtained during the investigation, I concluded that it is unlikely that additional investigation will result in a finding that the law was violated, as alleged, for that reason I will recommend issuance of the Notice of Right to Sue.

Doc. no. 32-5 (Exhibit to Plaintiff dep.), at ECF 40 (alteration supplied).  The EEOC issued a notice of right to sue on August 4, 2022, and plaintiff timely filed this action on November 2, 2022.

## III.  DISCUSSION

### A.     Topre's Objections to Plaintiff's Evidentiary Submission

Before addressing the merits of Topre's motion for summary judgment, it is necessary to evaluate the company's objections to portions of plaintiff's declaration, and to an unsigned memorandum on the letterhead of the U.S. Equal Employment

Opportunity Commission.[54]

## 1.   Plaintiff's declaration

Topre contends that paragraphs 9, 12, 14, 15, 18, 19, and 20 of plaintiff's declaration contradict her deposition testimony and should, therefore, be disregarded as "shams" designed to defeat summary judgment.[55]

The Eleventh Circuit explained the manner for evaluating such contentions in *Tippens v. Celotex Corp.*, 805 F.2d 949 (11th Cir. 1986), saying:

> A definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence.  An opposing party's affidavit should be considered although it differs from or varies [from] his evidence as given by deposition or another affidavit and the two in conjunction may disclose an issue of credibility.

> To allow every failure of memory or variation in a witness's testimony to be disregarded as a sham would require far too mush from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the witness (in this case, the affiant) was stating the truth.  Variations in a witness's testimony and any failure of memory throughout the course of discovery create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all.  Issues concerning the credibility of witnesses and weight of the evidence are questions of

---

[54] Doc. no. 42 (Defendant's Objections to Plaintiff's Evidentiary Submission).

[55] Topre also objects to paragraph 10 of plaintiff's declaration, in which she states: "Shortly after complaining to Cook, McWilliams, emboldened by his new promotion escalated his sexual harassment to a physical level."  Doc. no. 40-1 (Plaintiff's first decl.), ¶ 10.  Topre contends that this statement should be disregarded, as it is not based upon plaintiff's personal knowledge.  Plaintiff offers no response.  The court finds Topre's argument to have merit, thus this statement will not be considered.

> fact which require resolution by the trier of fact. *An affidavit may only be disregarded as a sham "when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact . . .* [and that party] *thereafter* [attempts to] *create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."*

*Id.* at 953-54 (quoting *Van T. Junkins & Associates v. United States Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)) (emphasis and alterations supplied, some internal citations and quotation marks omitted).

The Eleventh Circuit burnished that standard in the case of *Rollins v. TechSouth, Inc.*, 833 F.2d 1525 (11th Cir. 1987), where the court observed that

> our cases require a court to find *some inherent inconsistency* between an affidavit and a deposition before disregarding the affidavit. *If no inherent inconsistency exists*, the general rule allowing an affidavit to create a genuine issue "even if it conflicts with earlier testimony in the party's deposition," *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980), governs. In these instances, any conflict or discrepancy between the two documents can be brought out at trial and considered by the trier of fact.

*Rollins*, 833 F.2d at 1530 (emphasis supplied). In summary, this Circuit's doctrine should only rarely result in the exclusion of evidence. *See id.* (stating that the rule should be applied "sparingly because of the harsh effect [it] may have on a party's case") (alterations supplied).

### a.   Paragraph 9

In paragraph 9 of her first declaration, plaintiff states: "While I do not

remember the exact statements verbatim, McWilliams continued to make sexually grotesque and offensive remarks to me until my employment terminated."[56]  Topre contends that this statement directly contradicts plaintiff's deposition and interrogatory response which *specifically* identified only the statements described in Part II, *supra*.[57]  Topre emphasizes that plaintiff was directly asked during deposition whether she had described all incidents where McWilliams had made her uncomfortable, and she answered "yes."  Plaintiff explains, via a second declaration, that she "experienced high levels of anxiety, having to recount extremely traumatic events" during the deposition.[58]  As a result, at the time of the deposition, she "was unable to recall" that "there were other instances in which Michael McWilliams made sexually charged remarks to [her]."[59]  The court finds that the challenged statement presents a discrepancy that creates a credibility issue, rather than an inherent inconsistency that should be stricken.

### b.    Paragraphs 12, 14, and 15

Topre also challenges paragraphs 12, 14, and 15 of plaintiff's first declaration:

12.    Every day, McWilliams would sit next to me, and rub his hands and arms against my arms and against the sides and around my torso in a sexually provocative manner.  I would jump up and move away

---

[56] Doc. no. 40-1 (Plaintiff's first decl.), ¶ 9.

[57] See the text accompanying notes 8, 11, & 29, *supra*.

[58] Doc. no. 45-1 (Plaintiff's second decl.), ¶ 2.

[59] *Id.* ¶¶ 3-4 (alterations supplied).

quickly each time, but it did not stop him.

14.    Despite having no reason to be near me, weekly, McWilliams approached me from behind, while I was watching the stamp machine, and would rub his penis against my buttocks and hand.

15.    As I could feel McWilliams' penis press against my body and hand, I tried to quickly pull away each time, but had no choice to continue watching the stamp machine.

Doc. no. 40-1 (Plaintiff's first decl.), ¶¶ 12, 14-15.   Topre argues that plaintiff's statements about the nature and frequency of the incidents ("every day" and "weekly") contained in these paragraphs contradict her deposition testimony.

Upon review of plaintiff's deposition testimony, the court concludes that plaintiff provided equivocal answers to questions about the frequency of McWilliams's physical contact with her.  For example, plaintiff stated that she did not recall the number of times McWilliams made physical contact with her while they were seated at the picnic table.[60]  Likewise, she could not recall the number of times that McWilliams brushed against her from behind, although she agreed that it was fewer than five.[61]  As plaintiff correctly points out, the time frame for those incidents was not established during the deposition.  McWilliams was promoted to team lead at the end of February of 2024, and plaintiff ceased reporting to work less than a month later.  Accordingly, the statement in her declaration that McWilliams brushed

---

[60] Doc. no. 32-5 (Plaintiff dep.), at 95-96.

[61] Id. at 100-05.

against her "weekly" is not necessarily contradictory to her deposition testimony.

Additionally, plaintiff's description in the declaration of physical contact at the picnic

table and at her work station, while more specific, presents a credibility issue, rather

than an inherent inconsistency.

### c.    Paragraphs 18 and 19

In paragraphs 18 and 19, plaintiff states:

> During my employment with Topre, I felt extreme humiliation, intimidation, and fear because of McWilliams' conduct.  I also began to experience heart palpitations.  Due to McWilliams' conduct and Topre's failure to take action to investigate and protect me, my work environment became so unbearable that I had no other choice but to quit reporting to work.  I was scared for my life.  I did not know what he would do next and Topre not only refused to stop him from sexually harassing me, but rewarded him with a promotion!

Doc. no. 40-1 (Plaintiff's first decl.), ¶¶ 18-19.  Topre argues that those statements

should be disregarded in light of plaintiff's deposition testimony that she was

"physically able" to continue to work at Topre.[62]  The court concludes that these

statements merely expanded upon plaintiff's deposition testimony, rather than

contradicting it.  By not testifying during her deposition about the degree to which

McWilliams's conduct disturbed her, plaintiff's statements present a credibility issue,

at most.

---

[62] *See* doc. no. 32-5 (Plaintiff dep.), at 137.

### d.    Paragraph 20

In her first declaration, plaintiff states:   "To this day, I experience heart palpitations and sleeplessness when I think about McWilliams' conduct and Topre's failure to protect me from him."[63]   Topre contends that this statement conflicts with plaintiff's deposition testimony that she experienced symptoms only when she "talked" about her interactions with McWilliams.   The court finds no inherent inconsistency between plaintiff's deposition testimony and the challenged declaration statement.

### e.    Unsigned EEOC investigative memorandum

Topre objects to plaintiff's submission of a document typed under the letterhead of the U.S. Equal Employment Opportunity Commission, Birmingham District Office, by an unidentified individual, and dated March 22, 2022.   The memorandum contains the following statement under the heading "Witness Interview: Clistie Bradley":

> Ms. Bradley was hired from July 4, 2019 through August 21, 2021.  Ms. Bradley worked along with CP [*i.e.*, Charging Party] for allegedly three months.  Ms. Bradley stated she heard the alleged harasser asking CP for her telephone number, tell her that she was pretty, asked CP if he could sit down at her table when CP was [on] break/lunch, and tell CP that "you are my soul mate."  I asked Ms. Bradley if she witness[ed] any event/s in which the alleged harasser did to CP, she said that the alleged harasser used to make comments to CP and other women, that the

---

[63] Doc. no. 40-1 (Plaintiff's first decl.), ¶ 20.

alleged harasser would "tried [*sic*] to rub CP and tried to touch CP."  I asked Ms. Bradley if she ever witnessed the alleged harasser rubbing and/or touching CP or anyone else?  Ms. Bradley answered, "I don't remember."  Ms. Bradley stated CP went to speak with the Plant Manager Brandon Cook about the alleged on-going sexual harassment.  Ms. Bradley stated CP told her that Mr. Cook would not take CP's alleged harassment to anyone in their chain of command?  Ms. Bradley answered that CP, not her, reported the alleged harassment to her team lead, HR and to their supervisor, with no avail.  I thanked Ms. Bradley for her time and information.

Doc. no. 40-3.

Topre contends that the document should not be considered because it is not authenticated and contains inadmissible hearsay that plaintiff has not established could be reduced to admissible evidence.[64]  Plaintiff responds that the investigative note is offered as evidence of Ms. Bradley's knowledge of plaintiff's harassment.  Plaintiff further asserts that she intends to call Ms. Bradley as a trial witness and, thereby, will be able to reduce the note to admissible form.

The Federal Rules of Evidence define "hearsay" as "a statement that:  (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  Certain out-of-court statements, enumerated in Rule 801(d), are not considered to be hearsay.  Rules 803, 804, and 807 provide exceptions to the general proscription against hearsay evidence.  Out-of-court statements that do not fall within

---

[64] Doc. no. 42 (Defendant's Objections to Plaintiff's Evidentiary Submission), at 10-11.

those rules may be admissible.  Fed. R. Evid. 802.

"The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) (internal quotation and citation omitted).  Even so, "otherwise admissible evidence" may be submitted in an *inadmissible form* at the summary judgment stage, but must be submitted in admissible form at trial.  *Id.* at 1324 (citing *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996)).  Regardless of the stage of litigation, "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."  Fed. R. Civ. P. 56 advisory committee's note to 2010 amendments (alteration supplied).

The contested EEOC document contains statements with multiple levels of hearsay, for which plaintiff has provided no path of admissibility.  *See* Fed. R. Evid. 805 ("[E]ach part of the combined statements [must] conform[ ] with an exception to the rule.") (alterations supplied).  Even if plaintiff were to call Ms. Bradley as a trial witness, Ms. Bradley's testimony about statements McWilliams made to plaintiff still is inadmissible hearsay.  Likewise, Ms. Bradley's statements that plaintiff told her that she complained about McWilliams's conduct to Cook and that she "reported the alleged harassment to her team lead, HR and to their supervisor, with no avail" also is inadmissible hearsay.  However, Ms. Bradley could testify at trial as to the *conduct*

that she witnessed — *i.e.*, that McWilliams tried to rub and touch plaintiff — as such testimony is not hearsay.  Accordingly, only that portion of the EEOC document will be considered in connection with defendant's motion for summary judgment.

## B.   Topre's Motion for Summary Judgment

### 1.   Scope of EEOC charge

Topre contends that plaintiff failed to administratively exhaust her claim of sexual harassment because her EEOC charge, filed without the assistance of counsel, was insufficient due to its vagueness.[65]

The Eleventh Circuit has held that "a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  *Mulhall v. Advance Security Inc.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994).  Nonetheless, "the scope of an EEOC complaint should not be strictly interpreted."  *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970)[66] ("[A] Title VII [complaint] 'may encompass discrimination *like* or *related to* allegations contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission.'") (alterations supplied and

---

[65] Doc. no. 31 (Memorandum of Law in Support of Defendant's Motion for Summary Judgment), at 17.

[66] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the Former Fifth Circuit handed down prior to the close of business on September 30, 1981.

citations omitted).

The contested EEOC charge contains the following statements relating to plaintiff's claim that she was sexually harassed in violation of Title VII:

> While employed *I was subjected to egregious sexual harassment by Michael LNU* [*i.e., last name unknown*]*, Forklift Operator* as early as February 2021.  *I complained to numerous individuals within the organization* to include Brandon Cook, Head of the Department and my Team Lead, Noah LNU right after the first incident in February 2021, to no avail.  Instead of addressing the complaint, I was placed under the direct supervisor [*sic*] of Michael LNU, when he was promoted to Team Lead, working on the night shift.  *Once placed under Michael LNU, the harassment intensified and he began to intimidate me by telling me to tell Human Resources that he was a nice guy.  As a result of the sexual harassment and the fact that the Company failed to stop the harassment, I was constructively discharged on March 27, 2021.*

Doc. no. 1-1 (Plaintiff's EEOC charge appended to Complaint) (emphasis supplied).

Plaintiff testified that she prepared her EEOC charge without the assistance of an attorney.[67]  The charge contains general statements that she was sexually harassed by a Topre employee.  Her judicial complaint is necessarily more specific, alleging that the employee made particular statements and engaged in certain conduct.  This is not, however, a case in which plaintiff alleged a completely different *type* of claim, such as race discrimination, in her judicial complaint.  *Cf. Jerome v. Marriott Residence Inn Barcelo Crestline/AIG*, 211 F. App'x 844, 846-47 (11th Cir. 2006) (holding that plaintiff who had alleged only the denial of a promotion in his EEOC charge could

---

[67] Doc. no. 32-5 (Plaintiff dep.), at 73.

not assert a disparate pay claim, because the facts relating to his promotion claim did

not encompass facts that would also support such a claim).  Instead, the allegations

of plaintiff's judicial complaint amplified her EEOC charge.  As liberally construed,

the allegations of plaintiff's judicial complaint unquestionably fall within the scope

of her EEOC charge.  Accordingly, summary judgment on this basis is due to be

denied.

### 2.    Hostile environment

Plaintiff contends that she was subjected to a sexually hostile work

environment because of the conduct of her co-worker, Michael McWilliams.  To

prove a hostile work environment claim, a plaintiff must demonstrate:

> (1) that he or she belongs to a protected group; (2) that the employee has
> been subject to unwelcome sexual harassment, such as sexual advances,
> requests for sexual favors, and other conduct of a sexual nature; (3) that
> the harassment must have been based on the sex of the employee; (4)
> that the harassment was sufficiently severe or pervasive to alter the
> terms and conditions of employment and create a discriminatorily
> abusive working environment; and (5) a basis for holding the employer
> liable.

*Mendoza v. Borden*, *Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (*en banc*) (citation

omitted).

The Eleventh Circuit summarized the standards for evaluating a claim of a

hostile work environment in *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798,

808-09 (11th Cir. 2010), where the court said:

"Workplace conduct is not measured in isolation." Rather, the evidence of harassment is considered both cumulatively and in the totality of the circumstances.

Either severity *or* pervasiveness is sufficient to establish a violation of Title VII.  In evaluating allegedly discriminatory conduct, we consider its "frequency . . .; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

Moreover, the plaintiff must prove that the environment was both subjectively and objectively hostile.  "The employee must 'subjectively perceive' the harassment as sufficiently severe and [*sic*] pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable."  "So long as the environment would reasonably be perceived, and is perceived, as hostile or abusive, there is no need for it also to be psychologically injurious. "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'"

*Id.* at 808-09 (emphasis in original) (citations omitted).

Topre characterizes some of the incidents that plaintiff complains of as "not sexual," and argues that they should not form part of the severity or pervasiveness analysis.  Specifically, Topre asks the court to disregard plaintiff's complaints that McWilliams sat too close to her at the break table, and his request that she tell the Human Resources representative that he was a "good guy."[68]  Topre ignores the Supreme Court's mandate that the court examine the "totality of the circumstances"

---

[68] Doc. no. 31 (Memorandum of Law in Support of Defendant's Motion for Summary Judgment), at 9-10.

when assessing hostile environment claims.   Plaintiff perceived McWilliams's unusually close proximity to her and physical contact while seated at the picnic table as an advance.   While such close proximity may be viewed as innocuous or "incidental," as Topre characterizes it, in certain circumstances, plaintiff states that McWilliams rubbed his body against hers.   When viewed against the backdrop of the comments he previously made to her, his physical contact may be considered more than "incidental."

The question of whether McWilliams's request to plaintiff that she tell the Human Resources representative that he was a "good guy" is benign is a closer one. The comment is not overtly sexual in nature, but plaintiff believed that McWilliams meant to intimidate her with his statement, presumably so that she would not report his comments and conduct.   Given that the court must consider "all of the circumstances," the court will not exclude those incidents. *See Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81-82 (1998) ("The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.").

Topre next argues that plaintiff has failed to show that her subjective perception was objectively reasonable.   Primarily, Topre contends that the

complained-of incidents were neither sufficiently frequent, nor severe, to be actionable under Eleventh Circuit precedent. Topre also argues that McWilliams's conduct was not sufficiently frequent to support a hostile environment claim. Relatedly, Topre contends that Eleventh Circuit precedent in cases with a similar "density" of "minor transgressions" forecloses plaintiff's claim.[69]

There is no question that plaintiff subjectively perceived McWilliams's harassment as sufficiently severe or pervasive to alter the terms of her employment. Therefore, the court must evaluate whether her subjective perception was objectively reasonable, and thereby sufficient to satisfy the plaintiff's burden at this stage of litigation. This inquiry is necessarily fact-intensive, but the Supreme Court has provided guidance for analyzing the objective reasonableness of hostile environment claims — *i.e.*, the court should consider: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating; and, (4) whether the conduct unreasonably interferes with the employee's job performance. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998).

First, while the conduct at issue was not "frequent," neither was it infrequent. This case involves a mixture of physical contact and offensive utterances that

---

[69] *Id.* at 10-12.

occurred during a short period of time.  Plaintiff worked for Topre for about two months, and during that brief period, McWilliams made inappropriate comments to her on multiple occasions.  Specifically, she testified that, on their first meeting shortly after her employment began, McWilliams told her "I sure do like the fine ass woman who can take charge," and that he later told her "he wanted to run his tongue in [her] ass."[70]  Plaintiff also stated in her declaration that McWilliams continued to make "sexually grotesque and offensive remarks" until she stopped reporting to work. Additionally, McWilliams subjected plaintiff to unwelcome, objectionable physical contact regularly at the break table.   While she was working at her station, McWilliams rubbed his body, including his penis, against her buttocks and hand.[71] Given that physical contact was involved and that McWilliams's private parts touched plaintiff through clothing, the court concludes that, as to the second factor, a reasonable jury could find that the harassing conduct was severe.  *See, e.g.*, *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 509 (11th Cir.

---

[70] Notably, Topre concedes that McWilliams was fired for making "unwelcome, *less severe* statements" to another employee who complained about him shortly after plaintiff stopped reporting for work. Doc. no. 31 (Memorandum of Law in Support of Defendant's Motion for Summary Judgment), at 5 (emphasis supplied).

[71] Doc. no. 32-5 (Plaintiff dep.), at 104.  Plaintiff also testified in her deposition that those incidents occurred fewer than five times, but stated in her declaration that contact at the break table occurred "every day," and that McWilliams rubbed his groin against her while she was at her work station "weekly."  Doc. no. 40-1 (Plaintiff's first decl.), ¶¶ 12, 14.  Given her brief period of employment, those statements are not necessarily inconsistent, but they do present an issue of credibility which cannot be reconciled on summary judgment.

2000) (concluding that conduct including "standing so close to [the plaintiff] that his body parts touched her from behind" was severe).

Looking at the third consideration, McWilliams's contact with plaintiff was likewise physically threatening and humiliating.   Plaintiff testified that she experienced heart palpitations and loss of sleep due to her interaction with McWilliams.[72]   Based on its continuous impact, a reasonable jury could find McWilliams's conduct physically threatening and humiliating.

Finally, plaintiff has presented evidence that McWilliams's conduct interfered with her job performance, distracting her from her duties operating the hot stamp machine and, ultimately, serving as the basis for her decision to stop reporting for work.   Plaintiff's text message to Drouin, stating that McWilliams made her "so uncomfortable with stuff he says and does," and that "it stresses me going in to work with him," could support a reasonable jury's conclusion that the conduct interfered with plaintiff's job performance.

Even so, plaintiff must establish a basis for holding Topre liable.   *Mendoza v.* 195 F.3d at 1245.   The Eleventh Circuit has explained that

> [w]here the perpetrator of the harassment is merely a co-employee of the victim, the employer will be held directly liable if it knew or should have known of the harassing conduct but failed to take prompt remedial action.   Thus, a victim of coworker harassment must show either actual

---

[72] Doc. no. 32-5 (Plaintiff dep.), at 132.

knowledge on the part of the employer or conduct sufficiently severe and pervasive as to constitute constructive knowledge to the employer.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir. 2002) (citations omitted).  "Actual notice is established by proof that management *knew* of the harassment . . . ." *Id.* (emphasis supplied).  Additionally, actual notice is established where the complaining employee follows the reporting procedures established by an employer's clear and published policy.  *Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 (11th Cir. 2000).

In the present case, plaintiff argues that Topre had both actual and constructive notice that she was harassed by McWilliams; and, therefore, that Topre is responsible for the hostile work environment.  Significantly, Topre did not present argument on the issue of employer liability.  Plaintiff stated that she told the head of her department, Brandon Cook, that McWilliams made sexually charged comments to her, but that he took no action to address her complaints.  Cook, however, denies that plaintiff reported the substance of the comments, and complained only that she did not want to work with McWilliams because he was "intense."  Because a reasonable jury could credit plaintiff's testimony over Cook's, this issue is unsuitable for adjudication at the summary judgment stage.  *See Phillips v. Legacy Cabinets*, 87

F.4th 1313, 1322 (11th Cir. 2023).[73]  Accordingly, summary judgment on the hostile

environment claim is due to be denied.

### 2.    Constructive discharge

Plaintiff contends that  she was "constructively discharged" because Topre

failed to address her complaints about McWilliams's conduct, allowing his conduct

continued.   The Eleventh Circuit has established the standard for constructive

discharge claims:

> "Constructive discharge occurs when an employer deliberately makes an
> employee's working conditions intolerable and thereby forces him to
> quit his job." *Munday v. Waste Mgmt. of North America, Inc.*, 126 F.3d
> 239, 244 (4th Cir. 1997); *accord Young v. Southwestern Savings and
> Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975) ("The general rule is that
> if the employer deliberately makes an employee's working conditions
> so  intolerable  that  the  employee  is  forced  into  an  involuntary
> resignation,  then  the  employer  has  encompassed  a  constructive
> discharge and is as liable for any illegal conduct involved therein as if
> it had formally discharged the aggrieved employee."). A plaintiff must
> show "the work environment and conditions of employment were so
> unbearable that a reasonable person in that person's position would be
> compelled to resign." *Virgo v. Riviera Beach Assoc., Ltd.*, 30 F.3d 1350,
> 1363 (11th Cir. 1994); *see also Poole v. Country Club of Columbus*,
> *Inc.*, 129 F.3d 551, 553 (11th Cir. 1997); *Kilgore v. Thompson & Brock
> Mgmt.,  Inc.*,  93  F.3d  752,  754  (11th  Cir.  1996).   Establishing  a
> constructive discharge claim *is a more onerous task than establishing
> a hostile work environment claim.  Landgraf v. USI Film Prods.*, 968
> F.2d 427, 430 (5th Cir. 1992) ("To prove constructive discharge, the

---

[73] Plaintiff also argues that she has established Topre's constructive notice of her harassment
because she demonstrated Topre's failure to adequately investigate and respond to harassment
complaints generally.  *See* doc. no. 39 (Plaintiff's Brief in Opposition to Defendant's Motion for
Summary Judgment), at 23-25.  This argument need not be addressed.

> plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment."), *aff'd* 511 U.S. 244, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994); *see also Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1316-18 (11th Cir. 1989) (affirming district court's finding that plaintiffs established that they were subjected to a hostile work environment but were not constructively discharged); *Huddleston v. Roger Dean Chevrolet, Inc.*, 845 F.2d 900, 905-06 (11th Cir. 1988).

*Bryant v. Jones*, 575 F.3d 1281, 1298-99 (11th Cir. 2009) (emphasis supplied and footnote omitted).

Even if a plaintiff makes such a showing, however, an employer may defend against the claim by showing that it had a "readily accessible and effective policy for reporting and resolving" claims of discrimination, "and . . . that the plaintiff unreasonably failed to avail herself of the remedial process." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 134 (2004).

As discussed above, plaintiff has made a sufficient showing that she was subjected to a hostile work environment. However, the court concludes that whether the alleged harassment rose to the level necessary to support a claim for constructive discharge should be decided by a jury. *See, e.g.*, *Buckley v. Hospital Corporation of America, Inc.*, 758 F.2d 1525, 1530-31 (11th Cir. 1985) (finding that the evidence presented was sufficient to create a jury question as to whether a reasonable person would find the working conditions so intolerable that she would be forced to resign.). Further, there is a jury question as to whether plaintiff reported the harassment to

Cook, and thereby availed herself of Topre's remedial process. Accordingly, summary judgment on the constructive discharge claim also is due be denied.

### 3.    Count II

Finally, Topre moved for summary judgment on Count II (sex discrimination) of plaintiff's complaint, because it is based upon the same factual allegations, and is thus duplicative, of Counts I (sexual harassment) and III (constructive discharge). Plaintiff did not address this argument. Upon review of the complaint and consideration of the arguments made in defendant's brief, the court concludes that the claims asserted in Count II of the complaint are due to be dismissed as duplicative.

A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** this 24th day of October, 2024.

Senior United States District Judge